IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

| | | |
|---|---|---|
| **EOD TECHNOLOGY, INC.,**<br>Plaintiff,<br>v. | ) | **REDACTED VERSION** |
| **THE UNITED STATES,**<br>Defendant, | ) | Case No. __________ |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

EOD Technology, Inc. ("EODT"), by and through its undersigned counsel, files this complaint for declaratory and injunctive relief and alleges as follows:

## NATURE OF THE CASE

1. Plaintiff EODT brings this procurement protest action to set aside and enjoin the decision by Defendant, the United States, acting by and through the Kandahar Regional Contracting Center, a part of the U.S. Department of Defense (the "Army" or "Government"), to override the mandatory stay imposed by the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3553(d)(3)(A), when EODT filed a post-award bid protest with the U.S. Government Accountability Office ("GAO") challenging the Government's award of a six-month, sole source contract (the "Sole Source Contract") to American K-9 Detection Services, Inc. ("AMK-9").

## JURISDICTION AND STANDING

2. This Court has jurisdiction over this matter under 28 U.S.C. § 1491(b). See also Ramcor Servs. Group, Inc. v. United States, 185 F.3d 1286, 1290 (Fed. Cir. 1999); PGBA, LLC v. United States, 57 Fed. Cl. 655 (2003).

3. The remedies that EODT seeks are authorized by the Tucker Act, 28 U.S.C. § 1491(b)(1), and by the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02.

## PARTIES

4. Plaintiff EODT, headquartered in Lenoir City, Tennessee, provides a range of services to the Federal Government including munitions response, security services, and critical mission support worldwide in austere and hostile environments.

5. Defendant is the United States of America, acting by and through the Department of Defense.

## FACTUAL BACKGROUND

### The Army's Use Of Working Dog Services In Afghanistan

6. Kandahar Airfield ("KAF") and certain of its outlying Forward Operating Bases ("FOB") in Southern Afghanistan utilize Contract Working Dogs ("CWD") as one means to execute force protection requirements in support of operations. AMK-9 was providing these services under a contract that expired on March 31, 2008, and is now performing them on a sole source basis.

**The Solicitations and Awards to EODT**

7. The Army issued Solicitation No. W91B4L-08-R-0001 on October 23, 2007 for CWD services in Southern Afghanistan. These were to be a continuation of the same services that AMK-9 was currently performing. The solicitation contemplated a fixed-price contract for the CWD services with a base period of seven months and a possible three-month option period, which was to be awarded on a best value basis. EODT submitted a proposal and received the contract in December 2007. As a result of the award, EODT immediately began mobilizing its resources in order to begin performance.

8. Shortly thereafter, AMK-9 and another offeror, RONCO Consulting Corporation ("RONCO"), protested the Agency's award to EODT at the GAO. On January 11, 2008, EODT received a stop work order. The Army subsequently cancelled the solicitation and terminated EODT's contract for convenience.

9. On February 10, 2008, the Army issued a revised solicitation, Solicitation No. W91B4L-08-R-0013, for the same CWD services. EODT submitted a second offer, and, on February 28, 2008, the Army again awarded the contract to EODT. On March 11, 2008, AMK-9 again protested the Army's decision to award the contract to EODT. EODT was again instructed to stop work, and the contract was terminated on March 28, 2008.

**EODT's Bid Protest and Subsequent Army Action**

[redacted] After termination of EODT's second contract, on March 31, 2008, the Army issued a six-month sole-source award to AMK-9 to provide the services expressed in the cancelled solicitation. [redacted]



400810903v1

11. On April 1, 2008, EODT protested the cancellation of the solicitation and the sole source award at the GAO.

12. Pursuant to CICA, the Army was forced to stay performance of the Sole Source Contract to American K-9. Although the Army stopped work under the protested contract, it nevertheless authorized AMK-9 to continue performance of the CWD services pursuant to a sole source three-month "interim" contract. Upon information and belief, on or around April 5, 2008, the Army issued this second sole source contract to AMK-9 commencing immediately, with a three-month period of performance.

13. On April 11, 2008, the Army officially overrode the stay and authorized AMK-9 to resume performance of the six-month Sole Source Contract. The override determination and findings were signed by Major Michael Tomm and continued performance of AMK-9's sole source award was approved by Dale A. Ormond, the Acting Deputy Assistant Secretary of the Army (Policy and Procurement). The override package was sent to counsel for EODT on April 14, 2008.

**<u>The Army's April 2, 2008 Memorandum</u>**

14. On April 2, 2008, the Army issued a Memorandum, signed by Captain Tomm, the Contracting Officer, explaining its rationale for terminating EODT's contract, canceling the solicitation and issuing a sole-source award to American K-9 (the "Memorandum"). The Army alleges that the solicitation, and thus the resulting award to EODT, was flawed because it did not serve the needs of the government. The Memorandum outlines several reasons for the Army's drastic actions.

15. First, it states that the requirement that all contractor personnel process through the CONUS Replacement Center located at Fort Benning, GA was unclear and that, as a result of that unclarity, the offerors may not have bid equally.

16. Second, it states that the solicitation did not properly articulate the requirement that dog handlers working with the Special Forces hold a security clearance.

17. Third, the Memorandum states that the current award did not provide for the proper certification of canine teams. It outlines the process of certification and alleges that because of the length of time the Army requires to complete certification, the current award to EODT would have created a gap in protection.

18. Fourth, the Memorandum states that the number of teams required has increased beyond the number required by the solicitation.

19. Fifth, the Memorandum asserts that the current contract failed to address issues with regard to transition.

20. Sixth, and last, the Memorandum states that, shortly after award was made to EODT, [redacted], and in light of the fact that they no longer will be, the actual contract should have a longer base and option periods than the contract actually awarded to EODT.

**The Army Had Been Keenly Aware of its "Changing Requirements"**

21. Although the Army suggests in the Memorandum that its requirements for the CWD services contract had been changing rapidly and had not been previously understood, the

Army's meetings with EODT personnel demonstrate that agency officials were in fact aware of those differing requirements before the Army issued its last competitive solicitation.

22. In fact, in January of 2008, the Army sought feedback from offerors regarding whether the first CWD services solicitation, as drafted, sufficiently met the Government's needs. EODT specifically addressed the issues of certification, an increase in the number of dog teams needed, CRC processing, and security clearances with the Army on various occasions.

23. Nonetheless, Solicitation No. W91B4L-08-R-0013, which the Army issued in February of 2008, did not appear to address any of the concerns raised in prior interactions between EODT and the Army.

**<u>EODT Can Meet the Army's "Changing Requirements"</u>**

24. EODT has been and continues to be prepared to meet the Army's "changing requirements" as stated in the Memorandum.

25. EODT can easily deploy personnel with the requisite security clearances in a very short period of time, because it has many secured handlers worldwide.

26. EODT currently has [redacted] dog teams certified by the Army's certification authority and [redacted] uncertified teams in theater in Afghanistan and ready for certification.

[redacted]

**AMK-9 Cannot Meet the Army's "Changing Requirements"**

28. There are several reasons to doubt AMK-9's ability to meet the Army's "changing requirements" as articulated in the Memorandum (and to doubt that statements in the Memorandum about AMK-9's capabilities are accurate).

29. On information and belief, AMK-9 is currently providing handlers [redacted].

30. On information and belief, AMK-9 has not obtained [redacted]

31. AMK-9 is likely not positioned to meet the Army's increasing staffing requirements because EODT is aware of complaints about AMK-9 [redacted].

**The Use of Contract Working Dogs As One Of Many Security Measures**

32. Although CWDs are valuable tools in detecting explosive devices and narcotics, they are only one of many countermeasures utilized by the military.

33. Currently, an estimated [redacted]. These FOBs rely on other countermeasures.

34. The military possesses and uses many other countermeasures for explosive and narcotic detection: [redacted]



400810903v1

[redacted].

## CLAIMS FOR RELIEF

### COUNT I

**(Unlawful Override of CICA Stay)**

35. EODT incorporates by reference all the preceding paragraphs.

36. The Army's decision to override the CICA stay is arbitrary, capricious, and not in accordance with law.

37. EODT has suffered injury and will continue to suffer injury because of the Government's arbitrary, capricious, and unlawful decision to override the stay of performance on the Sole Source Contract. EODT has no adequate remedy at law for this injury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff EODT prays that this Court grant the following relief:

1. Enter a declaratory judgment holding that the Army's decision to override the CICA-mandated stay on the Sole Source Contract is arbitrary, capricious, or otherwise not in accordance with law, setting it aside, and reinstating the CICA stay on the Sole Source Contract *de jure*;

2. Issue a temporary restraining order prohibiting the Army from overriding the CICA stay of performance of the Sole Source Contract or otherwise permitting AMK-9 to commence or continue performing the contract;

3. Issue a preliminary injunction prohibiting the Agency from overriding the CICA stay of performance of the Sole Source Contract or otherwise permitting AMK-9 to commence or continue performing the contract, until such time as the Court enters a final judgment on the

merits of this action or EODT's GAO bid protest and any subsequent recommendation or other corrective action has been completed, whichever occurs first;

4. Issue a permanent injunction prohibiting the Army from overriding the CICA stay of performance of the Sole Source Contract or otherwise permitting AMK-9 to commence or continue performing the contract, until such time as GAO has resolved EODT's bid protest, the Army has accomplished any subsequent recompetition or other corrective action, and any subsequent review actions have been completed.

5. Award EODT its costs, including reasonable attorneys' fees and expenses;

6. Grant EODT such other relief as the Court deems just and proper.

Dated: April 16, 2008

Respectfully submitted,

John E. Jensen
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859
(703) 770-7560
(703) 770-7686 (protected facsimile)
Counsel for EOD Technology, Inc.

Of Counsel:

Jack Y. Chu
**PILLSBURY WINTHROP SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, VA 22102-4859