**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| **EOD TECHNOLOGY, INC.,** Plaintiff, | ) | **REDACTED VERSION** |
| v. | ) | |
| **THE UNITED STATES,** Defendant, | ) | Case No. 08-283C (Judge Lettow) |

**SECOND DECLARATION OF [redacted]**

I, [redacted], pursuant to 28 U.S.C. § 1746, state as follows:

1. I am the [redacted].

2. This declaration supplements my declaration of April 15, 2008 in the above case.

Separation of Contactors

3. It would be easy for both American K-9 Detection Services, Inc. ("AMK-9") and EODT to support contract working dog ("CWD") operations in southern Afghanistan without the two companies interacting to any substantial degree. The Army could divide the work by location because most worksites, including forward operating bases ("FOB"), are geographically separated. Not only can the work be separated by physical location of the worksites but even at one location, the Kandahar Air Field ("KAF"), the layout of the base lends itself to the physical

separation of the two contractors. [redacted]. There was no problem with regards to kennel space, billeting, or both companies having headquarters located on the same base.

4. In addition, the CWD services could be divided by customer. The contracts that EODT received supported several different customers: NATO, CJTF-82 (the US Army 82nd Airborne), KAF-CANADA, CANADA, CJSOTF (Coalition Special Operations Forces), and KAF – International Airport (NATO). There would not be any significant interaction between the operations supporting different customers.

Current Status of EODT Capabilities in Afghanistan

5. [redacted].

6. [redacted]

[redacted].

[redacted]

7. [redacted].

I affirm under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on April 24, 2008.

[redacted]