**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**BID PROTEST**

| | | |
|---|---|---|
| **EOD TECHNOLOGY, INC.,** Plaintiff, | ) | REDACTED VERSION |
| v. | ) | |
| **THE UNITED STATES,** Defendant, and | ) | Case No. 08-283-C |
| | ) | (Judge C. Lettow) |
| **AMERICAN K-9, INC.** Intervening Defendant | ) | Filed: April 24, 2008 |

**INTERVENOR'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION**

Intervenor American K-9 Detection Services, Inc. ("American K-9") respectfully submits this memorandum in opposition to Plaintiff EOD Technology's ("EODT") application for a temporary restraining order and motion for declaratory and injunctive relief.

The Government has demonstrated its rational determination that urgent and compelling circumstances necessitate going forward with performance of the contract. The record also illustrates that the Government has made a conscientious effort to balance the legitimate national defense concerns necessitating the immediate override with the Government's obligation to provide for full and open competition. Here, the sole source contract was purposely made as short in duration as practicable, reflecting the Government's concerted—if not aggressive—efforts to conduct a full and open competition within three months, and an orderly transition to

the materially different requirements addressed in the new competition in the three months thereafter.

Ironically, particularly given the constraints on the Government's procurement resources in Afghanistan, the approach urged by the Plaintiff—indeed, any other approach—would divert time, attention and resources from preparation and conduct of the full and open competition, resulting in further delays in the procurement, as well as the harm to the national defense interests the Government is diligently seeking to avoid. The Plaintiff was unable to perform the immediate requirements in the current six month contract. The decision to terminate the Plaintiff's award in March was Corrective Action, which the Government determined was fair and reasonable, as a result of American K-9's protest to the Government Accountability Office ("GAO"). For these and other reasons, the Plaintiff has suffered no harm, much less the irreparable harm it is required to establish.

**A. The Court Should Decline to Review the Merits of the Agency Override Decision Because Legitimate National Security Concerns Are Implicated**

The Competition in Contracting Act ("CICA") expressly permits the Government to override a CICA stay in certain "urgent and compelling" circumstances. See U.S.C. § 3553(d)(3); see also 48 C.F.R. § 33.104(a)-(h). This Court has further held that "where legitimate 'interests of national defense and national security' have been asserted and established to the court's satisfaction, it is 'not necessary' for the court to reach the merits of whether 31 U.S.C. § 3553(d)(3)(C)(i) was violated 'in connection with a procurement.'" Kropp Holdings, Inc. v. United States, 63 Fed. Cl. 537, 549 (2005).

In Kropp, the Court noted that in exercising its exclusive federal jurisdiction to adjudicate the override of CICA stays, it is required to "give due regard to the interests of national defense and national security and the need for expeditious resolution of the action." Id. at 548 (citing 28

U.S.C. § 1491(b)(3)). Further, the Court must, as a threshold issue under the Administrative Procedure Act ("APA"), determine whether it is "necessary ... [to] decide all relevant questions of law." Id. at 548 (citing 5 U.S.C. § 706). As such, the Court found that while it may properly exercise jurisdiction in some limited circumstances where a legitimate national defense interest has been asserted—such as where it must act to maintain a separation of powers between the three branches—doing so should be the exception rather than the rule. Id. at 549.

This Court has also held that the "[p]ublic interest ... militates against awarding injunctive relief when national defense and national security interests are concerned." Geo-Seis Helicopters, Inc. v. United States, 77 Fed. Cl. 633, 650 (2007) (citing Cincom Systems, Inc. v. United States, 37 Fed. Cl. 266, 269 (1997)). In considering the legitimacy of the national security concerns asserted, this Court will balance such concerns against the overriding public interest in preserving the integrity of the procurement process. Id. (citing Hospital Klean of Tex., Inc. v. United States, 65 Fed. Cl. 618, 624 (2005)). This Court will also weigh the potential harm to the plaintiff if injunctive relief is not awarded against the potential harm to the government and other contractors if such relief is granted, giving particular regard to the public consequences in employing the extraordinary remedy of injunction. OTI America, Inc. v. United States, 68 Fed. Cl. 646, 659-60 (2005) (citing Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982)).

The facts and circumstances in this case militate against partial injunctive relief because the potential harm to the Government and other contractors substantially outweighs the potential harm to the Plaintiff if injunctive relief is not granted. The facts and circumstances in the instant case can be distinguished in many ways from other cases in which partial injunctive relief was determined to be appropriate. For example, while the Court granted partial injunctive relief in

both Geo-Seis Helicopters, Inc. and OTI America, Inc., neither of those cases dealt with a national defense concern that entailed the effectiveness and security of American and Allied troops and contractor personnel located in hostile environments and engaged in direct combat. The Government has provided multiple and rational reasons why its current needs for American K-9's services in a "hot" war zone are not amenable to a "nice adjustment and reconciliation" as the facts in OTI America, Inc. or Geo-Seis Helicopters afforded. See OTI America, Inc. at 660. Additionally, in neither of those cases did the Agency fashion, as here, an approach that is reasonably calculated to achieve meaningful full and open competition for the Agency's needs as quickly as practicable.

In cases where the protection of U.S. military personnel was implicated, this Court regularly has denied injunctive relief—even after finding that an agency's actions were improper, which is not the case here—when the particular program was urgent and critically important to the national security and defense of the United States. See id. at 661; see also Gentex Corp. v. United States, 58 Fed. Cl. 634, 656-57 (2003) (denying injunctive relief "given the urgency of this procurement [for aircrew masks that provided protection in a chemical or biological attack] for the nation's military"); Al Ghanim Combined Group Co. Gen. Trad. & Cont. W.L.L. v. United States, 56 Fed. Cl. 502, 521-22 (2003) (rejecting injunctive relief for a procurement involving the construction of military housing for U.S. military personnel in Kuwait, finding that national security concerns were "of paramount import").

As in Gentex and Al Ghanim, the Government has properly determined that the incumbent contractor's uninterrupted provision of working dogs is absolutely critical to the proper protection of U.S. military personnel on the ground in Afghanistan, as well as to effective execution of combat operations, during the Government's efforts to build a new solicitation. See

Exhibit 1, Request for Authorization to Continue Performance of the Contracted Working Dog Services Under Contract W91B4L-08-M-0257 in Face of Government Accountability Office Protest B-311349.2 (hereinafter "Exhibit 1") at 1. Not only has the Government asserted a legitimate national defense interest here, but one that is even more dire and important than those considered by the Court in Kropp, Geo-Seis Helicopters, Inc. and OTI America, Inc.—or, for that matter, even more crucial than the interests implicated in Gentex and Al Ghanim, where injunctions were denied even though soldiers were not being placed at risk in direct combat.

Injunctive relief is an extraordinary measure of relief. The Court considers the following four factors in determining whether it is appropriate: 1) a showing of either a likelihood or actual success on the merits of the appeal; 2) a demonstration that plaintiff will suffer irreparable injury unless the stay is granted; 3) a showing that the stay would not pose substantial harm to other interested parties if granted; and 4) a showing that no harm will be inflicted upon the public interest. Ceres Environmental Services, Inc. v. United States, 52 Fed. Cl. 23, 38 (2002); see also Maintenance Engineers v. United States, 50 Fed. Cl. 399, 426 (2001) (noting that permanent injunction test is nearly identical to that for a temporary restraining order or preliminary injunction); ATA Defense Indus., Inc. v. United States, 38 Fed. Cl. 489, 505 n. 10 (1997) (noting that "factors are the same as those considered for a preliminary injunction"). In order to prevail, EODT must demonstrate by clear and convincing evidence that it is entitled to injunctive relief. See Delbert Wheeler Constr., Inc. v. United States, 39 Fed. Cl. 239, 251 (1997), aff'd, 155 F.3d 566 (Fed. Cir. 1998); Maintenance Engineers v. United States, 50 Fed. Cl. 399, 426 (2001).

As shown below, EODT has failed to demonstrate by clear and convincing evidence that it will prevail on the merits. The Government has articulated a rational basis for its override determination. Also pertinent is the fact that while the Plaintiff disagrees with the Government's

sole source action, the Plaintiff is not likely to demonstrate that the Government's limited sole source action here constitutes a violation of procurement law or regulation. Further, EODT cannot show that it will suffer irreparable injury unless the stay is granted, merely alleging vaguely that [redacted]. It is also particularly important to acknowledge that the Plaintiff's contract was terminated for the convenience of the Government, so imposing the CICA stay will not result in the Plaintiff's continuing or resuming performance. In fact, even if was *authorized* to perform immediately under the contract, the Plaintiff currently does not have the *ability* to perform immediately the requirements that American K-9 is already performing. In contrast, the stay would pose substantial harm to other interested parties—particularly the Government, *inter alia* its military personnel and national defense—if granted.

Finally, EODT cannot show that no harm will be inflicted upon the public interest, particularly since the Government has demonstrated that the override permits the Government to conduct a meaningful full and open competition for its minimum needs within three months. In addition, the prior award to the Plaintiff was terminated as part of Corrective Action taken in response to a GAO protest. Accordingly, the public interest in the integrity of the public procurement system is not well served by granting the Plaintiff relief. In short, there is the possibility of catastrophic harm being inflicted upon the national defense interests implicated here—particularly to those soldiers operating on the ground in Afghanistan—as well as material harm to other interested parties and the public interest.

In Kropp, the Court found that the nation could "ill afford any temporary, let alone permanent, weakness in national security" due to an interest that was primarily monetary in nature. Kropp at 546 (noting that the head of the procuring agency authorized an override to

prevent "significant expense"); see also id. at 549. In contrast, here, the Government based its override justification not on costs, but on a [redacted] Exhibit 1 at 9. The Government also cited obligations to coalition countries, and the welfare of their personnel. There can be no more important and legitimate basis for an override than one meant to spare the lives of the nation's and its allies' servicemen and women engaged in combat abroad. As such, the Court should find here that, as in Kropp, a legitimate national defense interest has been asserted, and it should decline to exercise its jurisdiction to review the merits of the Agency override decision or consider the plaintiff's application for a temporary restraining order and motion for a preliminary injunction.

**B. A Review of the Merits Shows that the Agency Override Decision Was Not Improper Under the APA Standard of Review.**

Agency procurement decisions generally will be upheld unless shown to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); 28 U.S.C. § 1491(b)(4); See generally PGBA, L.L.C. v. United States, 389 F.3d 1219 (Fed. Cir. 2004) (upholding decision to refrain from granting injunctive relief despite agency errors). The Court will not intervene unless the disappointed offeror demonstrates that there was no rational basis for the award decision or that there was "a clear and prejudicial violation of applicable statutes or regulations." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001); Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057 (Fed. Cir. 2000).

In determining whether an Agency override decision was arbitrary or capricious, the Court generally looks to the following four factors: 1) whether significant adverse consequences would occur if the Agency did not override the stay; 2) whether reasonable alternatives to the override were available; 3) how the benefits of overriding the stay compared to the potential cost

of the override; and 4) the impact of the override on the competition and integrity of the procurement system. Superior Helicopter L.L.C. v. United States, 78 Fed. Cl. 181, 188-89 (2007) (finding that the U.S. Forest Service decision to override a stay on a procurement for helicopter services was not justified). Here, each of those factors weighs in favor of the Government.

First, significant adverse consequences would almost certainly occur if the Agency did not override the stay. The Plaintiff has no current contract for these services, their prior award having been terminated as part of Corrective Action in response to a GAO protest. The Plaintiff does not have the resources or capability to immediately perform the existing requirements, so a lapse in these crucial services would have resulted. A break in the continuity of security services would have occurred, and will occur still if Plaintiff overturns the stay.

The importance of continuing American K-9's performance without disruption cannot be overstated. [redacted]. See Exhibit 2, Additional Working Dog Team Justification for [redacted] (hereinafter "Exhibit 2"); see generally Exhibit 3, Declaration of [redacted] (hereinafter "Exhibit 3"). To date, the current dog teams have discovered [redacted] improvised explosive devices ("IEDs") in and around the outlying Forward Operating Bases ("FOBs"). Exhibit 4, Justification and Approval for Other Than Full and Open Competition (hereinafter "Exhibit 4") at 1. If the [redacted] IEDs found in the last six months had detonated effectively, [redacted]. See Exhibit 2. It does not take much imagination to understand the potentially catastrophic impact if even one IED had gone undiscovered.

Second, no reasonable alternatives to the override were available. As shown above, it would be potentially catastrophic to go without dog teams—if even for one day—while a solicitation is being built. The Agency found that, as a matter of force protection, [redacted]. Exhibit 4 at 2. Further, while the Plaintiff alleges that other security measures can take the place of the working dog teams, it fails to explain in detail how such measures *reasonably* can be accomplished in the numbers, locations and manner necessary to preserve force protection, particularly without initiating another procurement for the increased alternative measures. See generally Exhibit 3.

The Plaintiff cannot itself perform without a substantial disruption to the Government. This is because, as the Government indicates, placing another contractor into established rotations will disrupt the integrity of the teams and diminish the efficiency and effectiveness of the explosive detection services. See Exhibit 5, Declaration of MAJ Tomm, April 21, 2008 (hereinafter "Exhibit 5") at ¶¶ 14-23. Similarly, the Plaintiff does not have the ability to perform the current requirements immediately, and fielding the current requirements may take the Plaintiff longer than the bridge contract. But most importantly, the Plaintiff improperly—and irrelevantly—substitutes its judgment for that of the commanders on the ground. Similarly, it is improper for the Plaintiff to second-guess the possible reasons—such as [redacted]—commanders on the ground had for choosing a single contract or for wanting the incumbent to perform the bridge contract rather than the Plaintiff.

Third, the benefits of overriding the stay compared favorably to the potential cost of the override. It is difficult to put a price on the ability to protect the lives of our servicemen and women in combat, particularly when compared to the rather minimal cost of terminating the

Plaintiff's contract and conducting a re-procurement. Further, there are benefits associated with allowing a proven incumbent with an outstanding Past Performance record like American K-9 to continue performing while properly determining the military's needs—such as the increased number of teams and more security clearances—rather than locking in an agreement with a new and unproven contractor based on faulty and possibly dangerous assumptions. Here, the Plaintiff was terminated for the convenience of the Government as Corrective Action, and the Plaintiff had not demonstrated the ability to perform in a timely manner the immediate requirements. Neither the integrity of the procurement system nor the national defense is well served by granting the Plaintiff's motion.

Fourth, the impact of the override on the competition and integrity of the procurement system is favorable and consistent with procurement law, regulations and policy. Certainly unfavorable impacts, if any, are minimal when compared to the national security concerns implicated. As noted above, the integrity of the procurement system is actually better served by ensuring that the military's needs are properly accounted for and met. Thus, there is no negative impact on competition, particularly in light of the minimal length of the bridge contract, the better statement of the Government's future needs, and the fact that EODT may compete in the near future for a larger opportunity. Such minimal concerns are greatly outweighed by the need to preserve the safety of troops in combat.

**C. Conclusion**

The Government has carried its burden of demonstrating urgent and compelling circumstances, and that there are legitimate national defense and national security concerns implicated in its decision to override the automatic CICA stay. EODT has failed to show by clear and convincing evidence that those issues are not legitimate, or that the Government's

determination is arbitrary and capricious. As such, the Court should decline to exercise jurisdiction in this matter in order to review the merits of the Agency override. However, even if the Court does review the merits of the Agency override, the record illustrates the Agency's decision was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. The Government properly set forth rational reasons for each Agency decision, most of which notably were informed by the direct experience of the commanders on the ground in the combat zone. EODT has failed to show that the Government's determinations were anything but reasonable. The Plaintiff's application for injunctive and declaratory relief should be denied in its entirety.

Respectfully submitted,

s/J. Philip Ludvigson
J. Philip Ludvigson
DLA Piper US LLP
500 Eighth Street, NW
Washington, DC 20004
Telephone: 202-799-4405
Facsimile: 202-799-5405

Counsel for Intervenor
American K-9, Inc.

Of Counsel:
Fernand A. Lavallee
DLA Piper US LLP
500 Eighth Street, NW
Washington, DC 20004
Telephone: 202-799-4401
Facsimile: 202-799-5401

Of Counsel:
Monica J. Washington Rothbaum
Stenstrom, McIntosh, Colbert, Whigham & Partlow, P.A.
1001 Heathrow Park Lane, Suite 4001
Lake Mary, FL 32746
Telephone: 407-322-2171
Facsimile: 407-330-2379

April 24, 2008

**CERTIFICATE OF FILING**

I hereby certify that on this 24th day of April, 2008, a copy of the foregoing "INTERVENOR'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/J. Philip Ludvigson
J. Philip Ludvigson
DLA Piper US LLP
500 Eighth Street, NW
Washington, DC 20004
Telephone: 202-799-4405
Facsimile: 202-799-5405

Counsel for Intervenor
American K-9, Inc.